| | |
|---|---|
| CHARLES D. ZOMBECK, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 06-953 |
| | ) |
| AMADA CO. LTD., a corporation, | ) |
| and AMADA AMERICA, INC., a | ) |
| corporation, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

BLOCH, District J.

Pending before this Court is Defendant Amada Co. Ltd.'s 12(b)(2) Motion to Dismiss for lack of personal jurisdiction (Document No. 4). For the reasons stated below, Defendant's Motion to Dismiss will be granted.

## I. Background

Plaintiff, Charles D. Zombeck, Jr., brought this action against Defendants Amada Co. Ltd. ("Amada"), and Amada America, Inc. ("Amada America"). Plaintiff is a resident of Pennsylvania. Defendant Amada is a corporation incorporated and doing business in Japan. Amada manufactures a variety of machinery including sheet metal machines (such as the hydraulic press brake that allegedly injured Plaintiff in this matter), power press machines, and metal cutting and steel structural machines. Amada has no offices,

1

employees, or representatives in Pennsylvania and is not licensed to do business in Pennsylvania. Amada America is a wholly-owned subsidiary of Amada and has its principal place of business in the State of California. Amada America distributes the products manufactured by Amada including the sheet metal equipment mentioned above.

This action arises out of an alleged injury suffered by Plaintiff on or about October 11, 2004 while he was operating an Amada HDS 1303 NT hydraulic press brake ("press brake") at Sabina Manufacturing ("Sabina Mfg.") in Lawrence, Pennsylvania. Plaintiff alleged that he was working as a bender at Sabina Mfg. through his employment with Adecco, an employment agency. The accident allegedly occurred while Plaintiff was pushing a piece of metal into the press brake. Plaintiff, whose fingers were near the press brake, believes that he unintentionally hit the foot-pedal that activated the press brake thus causing the top of the machine to descend onto the piece of metal. Plaintiff's fingers were crushed and amputated as a result of the incident.

Plaintiff brought claims against Defendants for negligence, product liability, and breach of express and implied warranties. Defendant Amada moves to dismiss this case for lack of personal jurisdiction arguing that it is not subject to general personal jurisdiction in Pennsylvania because it has not conducted continuous and substantial business in Pennsylvania. Defendant

2

Amada also asserts that there is no specific personal jurisdiction because it does not have any "minimum contacts" with Pennsylvania. Alternatively, Amada argues that to exercise jurisdiction over it would offend "traditional notions of fair play and substantial justice." In so asserting, Amada argues that it did not sell the press brake at issue in this litigation in Pennsylvania, that the product made its way into Pennsylvania through the unilateral activity of Amada America, and that Amada did not purposefully direct its activities toward Pennsylvania.

## II. Standards of Review

Under Federal Rule of Civil Procedure 4(e), a federal district court may exercise personal jurisdiction over non-resident defendants to the extent allowed by the law of the state in which the court sits.[1] See Mellon Bank (East) PSFS, N.A. v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992); Mesalic v. Fiberfloat Corp., 897 F.2d 696, 698 (3d Cir. 1990). Pennsylvania's Long Arm Statute, 42 Pa. C.S.A. § 5322(b), permits the exercise of jurisdiction over non-residents "to the fullest extent allowed under the Constitution

---

[1]    Rule 4(e) provides in relevant part:

Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or incompetent person, may be affected in any judicial district of the United States:
(1) pursuant to the law of the state in which the district court is located . . .
Fed.R.Civ.P. 4(e)(1).

3

of the United States."² 42 Pa. C.S.A. § 5322(b); Renner v. Lanard Toys, Ltd., 33 F.3d 277, 279 (3d Cir. 1994); Farino, 960 F.2d at 1221; Dollar Sav. Bank v. First Sec. Bank of Utah, N.A., 746 F.2d 208, 211 (3d Cir. 1984) ("The reach of the statute is coextensive with the due process clause [of the Fourteenth Amendment] of the federal Constitution."); Kubik v. Letteri, 532 Pa. 10, 614 A.2d 1110, 1113-14 (1992). Thus, this Court may exercise personal jurisdiction over Defendants provided that the exercise of such jurisdiction comports with the due process restrictions of the United States Constitution.

Once challenged, the burden is on the plaintiff to prove personal jurisdiction. See Marten v. Godwin, 499 F.3d 290, 295-296 (3d Cir. 2007); O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007); Farino, 960 F.2d at 1223. Prior to trial, a plaintiff need only make a prima facie showing of jurisdiction, and courts must take the plaintiff's allegations as true and construe all disputed facts in favor of the plaintiff for purposes of the analysis. See Carteret Savings Bank v. Shushan, 954 F.2d

---

²    Section 5322(b) provides in relevant part:

[T]he jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of § 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

42 Pa.C.S.A. § 5322(b).

4

141, 142, n. 1 (3d Cir.), cert. denied sub nom., 506 U.S. 817 (1992); Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002). If the plaintiff makes a prima facie case for the exercise of personal jurisdiction, then the defendant must show that the exercise of jurisdiction is unconstitutional by "present[ing] a compelling case" that the exercise of personal jurisdiction would be unreasonable based upon fairness factors. Farino, 960 F.2d at 1226 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). These fairness factors include: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. Burger King, 471 U.S. at 477, (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, (1980)); Farino, 960 F.2d at 1222.

A court may exercise personal jurisdiction based on a defendant's general or specific contacts with the forum. Specific jurisdiction is appropriate only if the "plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant 'should reasonably expect being haled into court' in that forum." Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co., 75 F.3d 147, 151 (3d Cir. 1996) (quoting World-Wide Volkswagen,

5

444 U.S. at 297). Specific jurisdiction is established where the defendant "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp. , 229 F.3d 254, 259 (3d Cir. 2000) (quoting Burger King, 471 U.S. at 472).

Pennsylvania law permits the exercise of general jurisdiction over a corporate defendant when the corporation carries on a "continuous and systematic part of its general business within this Commonwealth." 42 Pa. C.S.A. § 5301(a)(2)(iii). See also Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984). General jurisdiction is based on a defendant's relationship with the forum rather than on the particular contacts with the plaintiff.

### III. Discussion

Plaintiff contends that the Court is authorized to exercise specific and general personal jurisdiction over Defendant Amada. The Court will first examine the issue of specific jurisdiction and then proceed to that of general jurisdiction.

### A. Specific Jurisdiction

Specific jurisdiction involves an assertion of personal jurisdiction over a defendant in a lawsuit "arising out of or related to" the defendant's contacts with the forum state. Helicopteros, 466 U.S. at 414, n. 8; Mellon Bank (East), PSFS, N.A.

6

v. DiVeronica Brothers, Inc., 983 F.2d 551, 554 (3d Cir. 1993). It requires a conscious targeting of the forum. The test for determining whether specific jurisdiction exists has two parts. First, the Court must consider whether a defendant purposely established minimum contacts with Pennsylvania "such that [the defendant] should reasonably anticipate being haled into Court [here]." World-Wide Volkswagen, 444 U.S. at 297; North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 690 (3d Cir.) (per curiam), cert. denied, 498 U.S. 847 (1990). If minimum contacts are present, then the Court must determine whether the exercise of personal jurisdiction on the defendant accords with the notions of "fair play and substantial justice." Burger King, 471 U.S. at 476 (quoting International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement, 326 U.S. 310, 316 (1945)).

In order for a court to assert personal jurisdiction, there must be "some act by which the defendant purposely avails itself of the privilege of conducting business within the forum State, thus invoking the benefits and protections of its laws." Farino, 960 F.2d at 1221 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). These acts must be "such that [the defendant] should reasonably anticipate being haled into court [in the forum State]." World-Wide Volkswagen, 444 U.S. at 297. This test is intended to protect a non-resident defendant from jurisdiction based solely on random, fortuitous, or attenuated contacts, or the unilateral

7

activity of another party or third person. Burger King, 471 U.S. at
475 (citations omitted). In determining whether specific
jurisdiction exists, this Court should take into account "the
relationship among the defendant, the forum, and the litigation."
Shaffer v. Heitner, 433 U.S. 186, 204 (1977).

Plaintiff asserts that specific jurisdiction over
Defendant is proper under the "stream of commerce" theory.
World-Wide Volkswagen, 444 U.S. at 298. Under the stream of
commerce theory, "a forum state may exercise jurisdiction over a
non-resident corporation that delivers its products into the stream
of commerce with the expectation that they will be purchased by
consumers in the forum State." Id. See also Asahi Metal Industry
Co., Ltd. v. Superior Court of California, 480 U.S. 102 (1987);
Renner, 33 F.3d 277, 279 (3d Cir. 1994). If Defendant, through a
distribution chain, arranged for the products at issue to find their
way into the forum state, then minimum contacts sufficient to permit
this Court to exercise specific jurisdiction over Defendant would
exist.

In Asahi, the Supreme Court addressed the stream of
commerce theory and gave three separate characterizations of
purposeful availment through the stream of commerce. In the first
characterization, Justice O'Connor, joined by three other Justices,
concluded that "the placement of a product into the stream of
commerce, without more, is not an act of the defendant purposefully

8

directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State."[3]  480 U.S. at 112.  In the second characterization, Justice Brennan, writing for another plurality of four Justices, stated that "the stream of commerce refers . . . to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State," then the minimum contacts requirement is satisfied. Id. at 117.  In the third characterization, Justice Stevens stated that the determination of the existence of a defendant's minimum contacts with the forum requires the examination of "the volume, the value, and the hazardous character of the components."[4]  Id. at 122.

The Third Circuit has yet to definitively adopt any one of the three "stream of commerce" tests established in Asahi.  See Pennzoil Products Co. v. Colelli & Associates, Inc., 149 F.3d 197, 205 (3d Cir. 1998); H.A.S. Protection, Inc. v. Senju Metal Industry Co., Ltd., 2003 WL 23419852 at *6 (E.D.Pa. 2003); Renner, 33 F.3d at

---

[3]Justice O'Connor offered four examples of what that additional conduct might be: (1) designing the product for the forum state; (2) advertising in the forum state; (3) establishing channels to provide regular customer advice in the forum state; or (4) marketing the product through a distributor who has agreed to serve as the sales agent there.  Asahi, 480 U.S. at 113.

[4]Justice Steven's approach is not as commonly used as Justice O'Connor's and Justice Brennan's approaches although the distinction between Justice O'Connor's and Justice Steven's approaches is a subtle one.  See Renner, 33 F.3d at 282.

281-82; Affatato v. Hazet-Werk, 2003 WL 22797786 at *3 (E.D.Pa. 2003). Even so, "[i]t is clear . . . from Asahi and its precursors that there must . . . [be] . . . some 'purposeful availment' by the defendant, of the forum state" in order to exercise specific jurisdiction. Renner, 33 F.3d at 282.

In his first argument, Plaintiff alleges that Amada's press brake entered Pennsylvania through a chain of distribution and that Amada was aware of this. This fact alone is insufficient to exercise personal jurisdiction under any of the three stream of commerce tests as delineated in Asahi. Mere foreseeability that the defendant's products may end up in the forum state is not sufficient for "stream of commerce" jurisdiction. Pennzoil, 149 F.3d at 203.

In his second argument, Plaintiff also asserts that specific jurisdiction is present because Amada's products are sold in Pennsylvania. To this end, Plaintiff cites to Plaintiff's Exhibit 2 which lists Pennsylvania businesses that have Amada Machines. (Document 9-3). Plaintiff's Exhibit 2 consists of printouts of only two Pennsylvania companies that utilize Amada machines, General Metal Company (in Bensalem, Pennsylvania) and Gerome Manufacturing Company (in Uniontown, Pennsylvania). Although showing pictures of a host of Amada machines, Plaintiff provides no evidence showing how the machines highlighted in the printouts were obtained or that they were in any way related to the specific claim in this instant matter.

10

In his third argument, Plaintiff contends that Defendant Amada's website (www.amada.co.jp) is the same as Amada America's website (www.amada.com) and that the maintenance of Amada's website with its interactive features accessible by Pennsylvania residents serves as purposeful availment. (Plaintiff's Brief in Opposition at 7). "The mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 453 (3d Cir. 2003). Additionally, whether jurisdiction can be established based on a defendant's website depends on the nature of the cite:

> The "likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make

> information available to those who are
> interested in it is not grounds for the
> exercise personal jurisdiction. The middle
> ground is occupied by interactive Web sites
> where a user can exchange information with the
> host computer. In these cases, the exercise of
> jurisdiction is determined by examining the
> level of interactivity and commercial nature of
> the exchange of information that occurs on the
> Web site."

Zippo Mfg. Co. v. Zippo Dot Com, Inc. , 952 F.Supp. 1119, 1124
(W.D.Pa. 1997) (internal citations omitted). See also Desktop
Technologies, Inc. v. Colorworks Reproduction & Design, Inc., 1999
WL 98572 at *3 (E.D.Pa. 1999); Grutkowski v. Steamboat Lake Guides
& Outfitters, Inc., 1998 WL 962042 at *3 (E.D.Pa. 1998) (internal
citations omitted).

The Amada website, www.amada.co.jp, is not highly
interactive and has the characteristics of an informational site.
Defendant's site initially appears in Japanese and the user must
convert the text into English by clicking a link. Plaintiff's
Exhibit 4. After being converted into English, the website provides
basic information, such as the members of the Board of Directors,
product lists and descriptions, addresses and telephone numbers for
Defendant's offices, and other basic information. Id. The website
does not solicit any information from users or attempt to engage in
or direct any commercial activity at Pennsylvania. See Toys "R" US,
318 F.3d at 452-53 (3d Cir. 2003).

When examining websites similar to the one in this case,
other courts have held that the sites were passive and did not

12

provide a proper basis for the exercise of specific jurisdiction. For example, in <u>Bensusan Restaurant Corp. v. King</u>, 937 F.Supp. 295 (S.D.N.Y. 1996), the operator of a New York jazz club sued the operator of a Missouri jazz club for trademark infringement arguing that defendant's website provided minimum contacts with the forum state - New York. The court found that the website alone did not provide the minimum contacts necessary for specific jurisdiction because the site was not interactive and was not specifically targeted at the forum. <u>Id</u>. at 299. Instead, the website contained general information about defendant's club, but defendant did not ship or otherwise transmit tickets through the website. <u>Id</u>.

Based on the facts as established in this case, Plaintiff has not met the "purposeful availment" requirement. There is no indication that Defendant's website was designed to intentionally reach out to residents in Pennsylvania. There is no evidence of the "active solicitation" of business in Pennsylvania. <u>Zippo</u>, 952 F.Supp. at 1126. Defendant's website, is for the most part, passive. Plaintiff does provide evidence that the site allows users to submit comments to Defendant through electronic mail (Plaintiff's Exhibit 4) and this is the only interactive feature of the website. However, there is no evidence that the electronic mail is used for anything more than the submission of comments. Although the website does allow for inquiries into purchasing an Amada product (through the submission of comments), customers are not able to make actual

13

purchases on the Amada website; i.e. the website does not ask for credit card numbers, banking information, or other forms of payment. Furthermore, Plaintiff's assertion that the Amada website and the Amada America website are one and the same is inaccurate. The Amada website provides a link to the Amada America website (as it does for its other subsidiaries in various parts of the world such as Canada, the United Kingdom, Taiwan, Korea, India, and Thailand among others). The link for the Amada America website is not in open view and requires some exploration of the website in order to gain access. The reader has to go to the Network section of the Amada website. Upon reaching this section, the information that is first displayed is that of Amada's domestic operations which includes various companies in Japan. The reader has to go to the overseas section before having access to the non-Japanese operations, including Amada America. There is no push on the Amada website for customers to go to the Amada America website to purchase machines.

In his fourth argument, Plaintiff asserts that specific jurisdiction exists over Defendant Amada because Amada America, has sold the press brake at issue to Sabina Mfg., which is where Plaintiff was allegedly injured by the Amada HDS 1303NT. Plaintiff's Exhibit 6. Plaintiff's Exhibit 6 is a sales invoice of the sale of the press brake and a service report for the press brake. The sales invoice shows that the press brake was shipped from an Amada America location in Charlotte, North Carolina to

Sabina Mfg. in Lawrence, Pennsylvania, on August 13, 2004. The service report was generated by Amada America less than a month later on September 8, 2004. Contrary to Plaintiff's assertion that the service report is actually a document showing repairs made to the press brake (also evidenced in Plaintiff's labeling of Exhibit 6 as "Sabina (A Pennsylvania Business) Sales, Purchase Order, and Repair Documents for the Amada Co. Ltd. Machine that Injured Plaintiff"), it appears that the service report was generated as part of a routine process, namely to install the machine and set it up for use. Plaintiff's Exhibit 6 at 1. The service report documents the actions taken as follows:

> **Problems**
> begin install of HDS continue install of HDS training of customer on HDS
> **Action**
> removed shipping brackets and checked rotation. machine unable to save programs to hard drive. run image disk to reinstall but control shuts down on boot up, made changes to windows registry to load amnc. customer had wilson punch holders, reinstalled amada ones and adjusted curve, backed up parameters and flashcard. test bent material. begin training of customer on brake. finished by bending production. also gave Word cheat sheets as an aid

Plaintiff's Exhibit 6 at 6. This evidence that Plaintiff provides to indicate Amada's contacts with Pennsylvania only serves to show that Pennsylvania customers dealt exclusively with Amada America and that Defendant Amada was not involved in the provision of ongoing services.

15

In his fifth argument, Plaintiff points to three previous occasions on which Defendant was haled into court in Pennsylvania as a defendant and argues that this is enough to assert specific jurisdiction over Defendant Amada. Id. However, Plaintiff has not provided any evidence establishing that the three previous cases are related to the current claim, and it does not follow that this Court can exercise jurisdiction over Defendant Amada simply because it has litigated these other cases. See Bowers v. NETI Techs., Inc., 690 F.Supp. 349, 356 (E.D.Pa. 1988) (rejecting the argument that the defendants' presence as parties in prior lawsuit was sufficient to exercise personal jurisdiction). Therefore, these contacts cannot be used as a basis to assert specific jurisdiction over Defendant because the current claim does not arise out of the previous suits. See Helicopteros, 466 U.S. at 414, n.8.

In short, all of the facts provided by Plaintiff are insufficient, individually and collectively, in establishing specific jurisdiction over Defendant Amada. As Plaintiff fails to establish a prima facie case for specific jurisdiction, the Court need not determine whether Defendant Amada has shown that the exercise of specific jurisdiction would be violate notions of "fair play and substantial justice."

## B. General Jurisdiction

General jurisdiction is exerted where the defendant has maintained "continuous and systematic" contacts with the forum

16

state. See Provident Nat. Bank v. California Fed. Sav. and Loan Ass'n., 819 F.2d 434, 437 (3d Cir. 1987). This standard is considerably higher than that of specific jurisdiction which requires a showing of "minimum contacts." Id. See also Dollar Sav. Bank v. First Sec. Bank of Utah, 746 F.2d 208, 212 (3d Cir. 1984); Reliance Steel Products v. Watson, Ess, Marshal & Enggas, 675 F.2d 587, 588-89 (3d Cir. 1982). Establishing general jurisdiction over a defendant requires the court to examine all of the defendant's contacts with the forum state. The facts used to assert general jurisdiction must be "extensive and pervasive." Allied Leather Corp. v. Altama Delta Corp.,785 F.Supp. 494, 497 (M.D.Pa. 1992) (internal citations omitted). As the Third Circuit Court of Appeals explained in Provident Nat. Bank, the plaintiffs must show that the defendant "carried on a continuous and systematic part of its general business within the Commonwealth." 819 F.2d at 437.

As was the case in his argument for specific jurisdiction, Plaintiff's argument for general jurisdiction over Amada relies primarily on the contacts of its subsidiary, Amada America. Plaintiff argues that Defendant Amada has established continuous and system contacts with Pennsylvania through its financing and leasing of several of its products in Pennsylvania, the shipping of several Amada-made machines to Pennsylvania, and through the maintenance of the website that is directed towards

Pennsylvania.[5]  (Plaintiff's Brief at 8).  The evidence

(Plaintiff's Exhibit 6) presented to support his argument that

Defendant Amada finances or leases some of products in

Pennsylvania is lacking.  Exhibit 6 does show that Amada America

did sell the press brake at issue to Sabina Mfg. but it does not

show any information that would indicate that Defendant Amada

financed or leased its products to Pennsylvania residents.

        The allegation that Defendant Amada has continuous and

systematic contact with Pennsylvania through its informational

website is also unsupported as Plaintiff's evidence fails to

demonstrate that Defendant directed or targeted the site at

Pennsylvania.  See Molnlycke Health Care AB v. Dumex Med. Surgical

Prods. Ltd., 64 F.Supp.2d 448, 452 (E.D.Pa. 1999) (maintenance of

Internet website, on which defendant sold allegedly infringing

product, was not sufficient to establish court's general personal

jurisdiction over defendant).  The maintenance of an informational

website is not sufficient in establishing personal jurisdiction

over Amada.  See Simplicity, Inc. v. MTS Products, Inc., 2006 WL

924993 at *7 (E.D.Pa. 2006) (quoting Blackburn v. Walker Oriental

Rug Galleries, Inc., 999 F.Supp. 636, 639 (E.D.Pa.1998) which

_____

[5]However, Plaintiff has failed in providing evidence to substantiate
the allegations in his allegations regarding jurisdiction.   A
plaintiff must provide sworn affidavits or other competent evidence,
and cannot simply rely on pleadings alone in establishing
jurisdictional facts. Time Share Vacation Club v. Atlantic Resorts,
Ltd., 735 F.2d 61, 66-67 n.9 (3d Cir. 1984).

18

states that "[c]reating a Web Site may be felt nation or even world wide, but without more, it is not an act purposefully directed toward the forum"). Although Amada's website (www.amada.co.jp) does allow those viewing it to request additional information about Amada's products by filling out forms, personal jurisdiction cannot also be exercised simply because of an exchange of information. See Blackburn v. Walker Oriental Rug Galleries, Inc., 999 F.Supp. 636, 639 (E.D.Pa. 1998) (holding that a website which permitted a reader to send e-mail to the site's sponsor did not establish jurisdiction over the site's sponsor in the reader's forum).

Plaintiff further asserts that personal jurisdiction exists under an "alter ego" theory of jurisdiction, thus attributing the contacts of Amada America to Defendant Amada. As support of his allegations, Plaintiff points to the fact that Defendant Amada owns one hundred percent of Amada America (Plaintiff's Exhibit 7), that Amada controls the daily operations of Amada America, and that the two companies have an integrated sales systems.

"A subsidiary will be considered the alter-ego of its parent only if the parent exercises control over the activities of the subsidiary. To prevail under its alter ego theory, Plaintiff must demonstrate that the degree of control exercised by the parent is greater than normally associated with common ownership

19

and directorship. Plaintiff must prove that the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent." Componentone, L.L.C. v. Componentart, Inc., 2007 WL 2359827 at *2 (W.D.Pa. 2007) (internal quotations and citations omitted). See also Savin Corp. v. Heritage Copy Products, Inc., 661 F.Supp. 463, 468 (M.D.Pa.1987). One hundred percent "stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations." Id. See also Gammino v. Verizon Communications, Inc., 2005 WL 3560799 at *3 (E.D.Pa. 2005) (quoting Botwinick v. Credit Exch., Inc., 213 A.2d 349, 353 (1965) which states, "Neither the similarity of names between the parent and subsidiary corporation, nor the total ownership of the stock of the subsidiary by the parent, nor the fact that a single individual is the active chief executive of both corporations will per se justify a court in piercing the corporate veil if each corporation maintains a bona fide separate and distinct corporate existence"); Dutoit v. Strategic Minerals Corp., 735 F.Supp. 169, 171 (E.D.Pa.1990) (the Court did not exercise jurisdiction over the foreign parent corporation because "plaintiffs have not shown that corporate formalities have been disregarded in any significant way").

Taking all of Plaintiff's allegations to be true and resolving all factual disputes in favor of him, Plaintiff fails to

make out a prima facie case that Amada America's jurisdictional contacts should be imputed to Amada. The burden is on Plaintiff to rebut the presumption of the separateness of Amada and Amada America with competent evidence. See Clark v. Matsushita Elec. Indus. Co. Ltd., 811 F.Supp. 1061 (M.D.Pa. 1993). Plaintiff has failed in providing sufficient evidence to establish that Defendant Amada is the alter ego of Amada America.[6] Plaintiff simply asserts that the marketing image and trademark of all the Amada companies are the same, that the integration of the sales system amongst all the Amada companies are the same, the distribution for Amada is being conducted by Amada America, that Amada conducts the business functions of Amada America, and that Defendant Amada "instructs Amada America . . . in the promotion, sales, development, servicing and marketing of Amada machines." Plaintiff's Brief at 10.

The evidence that Plaintiff presents includes: a March 1, 2006 Disclosure Statement by counsel for Amada America from another proceeding in the District Court in the Northern District of New York that states that Amada America is one hundred percent owned by Defendant Amada (Plaintiff's Exhibit 7), and a packet of

---

[6]Plaintiff does little to prove that Defendant Amada is an alter ego for its subsidiary, Amada America. In fact, much of Plaintiff's discussion on the matter does nothing more than state the case law and requisite elements for a showing of an alter ego. The essence of the discussion is contained in a short paragraph with bald statements and no support of the assertions.

print outs from the Amada web pages (Plaintiff's Exhibit 4). The
web pages are varied in their subject with the first set of pages
discussing Amada's plans for overseas expansion, the second set
displaying the types of machines that Amada manufactures,[7] the
third set listing Amada's earnings, the fourth set listing Amada's
subsidiaries, and subsequent areas containing information about
Amada in Japanese. Despite the copious amount of pages in
Plaintiff's Exhibit 4, Plaintiff fails to demonstrate its
significance and how it supports his assertions. Although there
are portions of Exhibit 4 that are circled or underlined,
Plaintiff makes no reference to these sections in his brief.[8] One
such marked areas highlights a portion of a statement made by the
president of Amada, Mitsuo Okamoto, in which he says, "In fiscal
2004, ending in March 31, 2004, strong capital spending in the
United States and of an economic pickup in Europe prompted a solid
recovery in the global economy." Plaintiff's Exhibit 4 at 4. It
is the first portion of the statement, (as indicated here) that is
underlined and Plaintiff provides no further elaboration on how
this establishes Amada as an alter ego of Amada America or how it
stands for continuous and systematic contacts with Pennsylvania.

---

[7]Some of the pages are illegible. See Plaintiff's Exhibit 4, at 19-
26.

[8]Plaintiff's Exhibit 4 is 72 pages long and he refers the Court to
Exhibit 4 with no subsequent discussion of the information contained
therein; there is no specific reference to the portions marked in
Exhibit 4. See also Plaintiff's Brief at 10.

Another marked area is in the section that contains a list of

Amada's subsidiaries with Amada Lease Co. Ltd. (another subsidiary

of Amada) and the description of its main duties (leasing of

metalworking and machine tools), being circled. Plaintiff's

Exhibit 4 at 14. Although Plaintiff does make the argument that

Amada "finances/leases several of its products in Pennsylvania"

(Plaintiff's Brief at 8), Plaintiff makes no mention of Amada

Lease Co., Ltd. in any part of his Brief nor does he provide

evidence of its connection to Defendant Amada and Amada America in

this instant matter.  There is simply no evidence provided of a

"day-to-day" control by Defendant Amada over Amada America.

Therefore, there is insufficient basis to assert general

jurisdiction over Amada.

## IV.  Conclusion

For all of the reasons set forth herein, Defendant's

motion is granted.  An appropriate Order will be issued.

s/Alan N. Bloch
United States District Judge

Dated:    November 15, 2007

ecf:      Counsel of record