IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHARLES D. ZOMBECK, JR.,             )
                                     )
          Plaintiff,                 )
                                     )
    vs.                              )   Civil Action No. 06-953
                                     )
AMADA AMERICA, INC.,                 )
                                     )
          Defendant.                 )


MEMORANDUM OPINION

BLOCH, District J.

Presently before the Court is Defendant's Motion for Summary Judgment (Doc. No. 28). For the reasons set forth below, Defendant's motion is denied.

I.   **BACKGROUND**

This is a negligence/products liability case, over which this Court has jurisdiction based on diversity of citizenship, pursuant to 28 U.S.C. § 1332.

Plaintiff brings this case against Amada Company, Ltd.,[1] and Amada American, Inc. (Amada). Plaintiff alleges that on or about October 11, 2004, while working for Adecco on the property of Sabina Manufacturing, he was seriously injured on a hydraulic press

---

[1] By Order dated November 15, 2007, Amada Company, Ltd., was dismissed from this action for lack of personal jurisdiction. On November 6, 2008, the Third Circuit dismissed Plaintiff's appeal of this Order for lack of appellate jurisdiction.

1

brake when he "was placing and/or pushing a piece of metal into the hydraulic press brake for bending and/or folding when he believes that he may have unintentionally and/or inadvertently hit the foot petal activating the press brake, and causing the top of the machine to lower down onto the piece of metal while his fingers were near or at the pinch point of the machine." The tips of the long, ring and small fingers on his left hand were amputated.

Plaintiff claims that he suffered the following injuries as a direct and proximate result of the incident: (a) amputation of the tips of the long, ring and small fingers of his left hand; (b) muscle damage; (c) permanent scarring and disfigurement; (d) residual deficits of function of his left hand and upper extremity; and (e) other injuries of a serious and permanent nature.

Plaintiff further alleges that he sustained the following damages, all of which he says are or may be permanent in nature: (a) he has been required to undergo numerous surgical procedures, including debridement and skin grafting; (b) he has experienced and will experience great pain, suffering, embarrassment, inconvenience and mental anguish; (c) he has been and will be deprived of his earnings; (d) his earning capacity has been reduced and permanently impaired; (e) his general health, strength and vitality have been impaired and will continue to be so impaired in the future; (f) he has been disfigured; (g) he has been unable to enjoy the ordinary pleasures of life; and (h) he has been and will in the future be

required to expend large sums of money for medical care and surgical supplies, medicines and other attendant health services and products.

Based upon the above, Plaintiff alleges that Amada was negligent in the manufacture, design, assembly, sale, supply and/or distribution of the press brake and/or its components (Count I), that Amada is strictly liable to Plaintiff for his injuries sustained by the press brake (Count II), and that Amada breached the expressed and implied warranties of merchantability and fitness for a particular purpose (Count III).

## II.     **FACTUAL BACKGROUND**

The record as read in the light most favorable to Plaintiff establishes the following background. On or about October 11, 2004, Plaintiff was working as a temporary employee of Sabina Manufacturing and was operating a hydraulic press brake that had been manufactured by Amada. He was seriously injured on this hydraulic press brake when he was placing or pushing a narrow piece of metal into the hydraulic press brake. He inadvertently hit the foot petal that activated the machine, thereby causing the top of the machine to lower down onto the piece of metal while his fingers were near or at the pinch point of the machine. There was no guard on the front of the press brake to protect Plaintiff's fingers from entering the pinch point. The tips of the long, ring and small fingers on his left hand were amputated.

3

Plaintiffs' liability expert, Richard E. Harkness, concluded, in a report dated April 2, 2007, that Amada failed to provide adequate safeguards on the press brake, thereby causing Plaintiff's injuries. Harkness is a mechanical engineer, with over 40 years of experience in mechanical design and analysis. He holds a Bachelor of Science degree from the United States Naval Academy, a Master of Mechanical Engineering degree and a Doctor of Philosophy degree in Mechanical Engineering from Catholic University. He has been involved in four or five proceedings in which press brakes were at issue. Harkness based his analysis on his education and experience and the prevailing principles of mechanical engineering, safety engineering and machine design.

On February 28, 2006, Harkness inspected the press brake. Harkness noted that given the small width of the piece the Plaintiff was working with at the time of his injuries, his hands had to have been very close to the point of operation. The machine did not have a point of operation guard, an interlocked "down" foot switch, a light curtain device or a hand/foot option. In Harkness's opinion, "the technology to provide a safe press brake was available and in use long before [Amada's press brake] was designed and manufactured."

### III. APPLICABLE LEGAL STANDARD

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories and admissions on file,

4

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson</u>, 477 U.S. at 247-48 (emphasis in original). The summary judgment standard requires the issue to be genuine, that is, one where a reasonable jury, based on the evidence presented, could return a verdict for the non-moving party with regard to that issue. <u>See</u> <u>id.</u> at 248. In addition, the disputed fact must be material, meaning it might affect the outcome under the substantive law. <u>See</u> <u>Boyle v. County of Allegheny</u>, 139 F.3d 386, 393 (3d Cir. 1998).

When deciding a motion for summary judgment, the Court must draw all inferences in a light most favorable to the non-moving party without weighing the evidence or questioning the witnesses' credibility. <u>See</u> <u>id.</u> The movant has the burden of demonstrating the absence of a genuine issue of material fact, while the non-movant must establish the existence of each element for which it bears the burden of proof at trial. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the movant has pointed to sufficient evidence of record to demonstrate that no genuine issues of fact

5

remain, the burden is on the non-movant to search the record and detail the material controverting the movant's position. See Schulz v. Celotex Corp., 942 F.2d 204, 210 (3d Cir. 1991). Rule 56 requires the non-moving party to go beyond the pleadings and show, through the evidence of record, that there is a genuine issue for trial. Celotex, 477 U.S. at 324.

## IV. DISCUSSION

Defendant now moves for summary judgment by seeking to exclude Harkness's proffered expert testimony pursuant to Rule 702 of the Federal Rules of Evidence.

Under the Federal Rules of Evidence, a trial court must evaluate evidence for admissibility before considering that evidence in deciding a motion for summary judgment. See Fed.R.Evid. 104(a). The proponent of the evidence has the burden of proving by a preponderance of the evidence that it is admissible. Bourjaily v. United States, 483 U.S. 171, 175 (1987). Admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which states in part:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon facts and data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the fact of the case.

6

Fed.R.Evid. 702. Under Rule 702, the trial court acts as a gatekeeper, "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993). This gatekeeping function applies to scientific testimony as well as expert testimony based on technical or other specialized knowledge. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999).

Plaintiffs' liability expert, Richard E. Harkness, concluded, in a report dated April 2, 2007, that Amada failed to provide adequate safeguards on the press brake, thereby causing Plaintiff's injuries. Defendants seek to exclude this testimony under Federal Rule of Evidence 702, alleging that: (a) Harkness is unqualified to testify; (b) his methodology is unreliable; and (c) his opinion will not be helpful to the jury. Defendant also argues that, because Harkness's opinions purportedly have little probative value and are highly prejudicial to defendant, his testimony should be excluded under Federal Rule of Evidence 403.

Defendant claims that Harkness lacks the proper expertise because he has no specific experience with the press brake at issue in this case. The requirement that the witness proffered to testify must be an expert should be interpreted liberally. See In re TMI Litig., 193 F.3d 613, 664-65 (3d Cir. 1999). Courts should not impose "overly rigorous requirements of expertise," but should be satisfied with more generalized qualifications. In re Paoli R.R.

Yard P.C.B. Litig., 35 F.3d 717, 741 (3d Cir. 1994) (citing cases). Harkness is a mechanical engineer with the requisite education and experience to act as an expert with regard to the press brake at issue here. Therefore, the Court finds that Harkness is qualified to render an expert opinion in this matter.

In assessing the reliability of a proffered expert's testimony, a trial court must focus not on the substance of the expert's conclusions, but on whether those conclusions were generated by a reliable methodology. Daubert, 509 U.S. at 590. To assist district courts in determining whether an expert opinion is reliable, the Third Circuit has set forth a number of non-exclusive factors that may be considered: (1) whether the expert's technique or theory can be or has been tested; (2) whether the conclusions have been published and subjected to peer review; (3) the potential or known error rate; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the expert's conclusions have gained general acceptance in the relevant scientific community; (6) the relationship of the technique to methods that have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put. Pineda v. Ford Motor Co., 520 F.3d 237, 247-48 (3d Cir. 2008). These factors are not a "definite checklist or test"; instead, this reliability test is "a flexible one," where the court

"may consider one or more" of the factors, depending on the facts of the particular case. Kumho Tire, 526 U.S. at 150. Because Harkness is an engineer and his testimony is more "technical" than "scientific," the Court has great discretion in determining how to assess his reliability. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 151-52 (1999). The fact that Harkness is qualified to render such an opinion, as discussed above, argues in favor of finding his opinions to be sufficiently reliable. See In re TMI Litig., 193 F.3d at 664-65.

Defendant argues that Harkness's opinions are unreliable because he has no knowledge of press brakes generally. Direct experience with the type of machinery at issue is not a prerequisite for the admission of expert testimony. See Surace v. Caterpillar, Inc., No. CIV. A. 94-1422, 1995 WL 303895, at *2 (E.D. Pa. May 16, 1995), aff'd in part, 111 F.3d 1039 (3d Cir. 1997); see also Marmol v. Biro Mfg. Co., No. 93 CV 2659(SJ), 1997 WL 88854, at *4-*5 (E.D.N.Y. Feb. 24, 1997) (permitting expert to testify about a band saw even though he had never operated or designed one).

Defendant also argues that Harkness's opinions are unreliable because he has never tested the alternative safety designs. The Third Circuit has made clear, however, that the district court should not focus too narrowly on a failure to test the effectiveness of alternatives. See, e.g., Pineda, 520 F.3d at 248 (reversing decision to exclude expert testimony, finding that

expert did not have to develop or test alternative warnings to render opinion that service manual did not provide adequate instructions).

According to Harkness's expert report, he inspected the press brake and identified available safety features that are commonly available. During his deposition, Harkness stated that the interlock guard he recommended was quite common on many types of machine tools. Based on this evidence, the Court finds that Harkness's opinions as to the need for an interlocking guard, a shut-off switch or a "light curtain" device are sufficiently reliable to be admitted. Because Harkness's opinions on these issues "fit" this case and so may be helpful to the jury, the Court declines to exclude this testimony as unduly prejudicial under F.R.E. 403. See Paoli, 35 F.3d at 747 (noting that Rule 403 is rarely an appropriate basis for pre-trial exclusion of expert testimony). Any shortcomings in Harkness's opinions in these areas that Amada may have identified go to the credibility and weight of those opinions, not to their admissibility.

Ultimately, Plaintiff takes issue with Harkness's conclusions, not with his methodology. Where an expert's underlying methodology is reliable, defects in the conclusion go to the weight of the evidence and should be explored on cross-examination. Daubert, 509 U.S. at 598. The Court is satisfied that Harkness used a reliable methodology in formulating his opinions that defects in

10

the design of Amada's press brake contributed to Plaintiff's injuries.

## V. **CONCLUSION**

Based on the foregoing, Defendant's motion for summary judgment is denied.

An appropriate Order will be issued.

s/Alan N. Bloch
United States District Judge

Dated:   January 27, 2009

ecf:   Counsel of record

11